[No. 39630.     Department Two.     July 17, 1969.]

WILLIAM R. JOHNSTON *et al., Appellants,* v. VICTOR OHLS *et al., Respondents.**

*Reported in 457 P.2d 194.

*Helsell, Paul, Fetterman, Todd & Hokanson, William A. Helsell, Arthur L. Davies, T. Dennis George,* and *Mullavey, Hageman & Treece,* for appellants.

*Anderson, Hunter & Carlson* and *M. J. Carlson,* for respondents.

NEILL, J.—Plaintiffs appeal from a jury verdict and judgment for defendants in a tort action for injuries resulting from a motorbike accident allegedly caused by a dog owned by defendants.

The accident occurred on August 26, 1965. Plaintiff William R. Johnston was driving a Honda motorbike. He was proceeding down Filbert Drive in a rural residential area of Snohomish County with his little daughter riding on the gas tank in front of him. The defendants' cocker spaniel-Welsh terrier dog ran out into the street from defendants' yard. The dog and motorbike collided. Mr. Johnston and his daughter were each injured and the dog was killed.

The testimony is in some dispute as to whether the dog was actually attacking the plaintiffs, chasing the motorbike, or merely crossing the street. The previous temperament and disposition of the dog is also disputed, but there was evidence that it had previously bitten neighborhood children and had occasionally chased bicycles and motorcycles in front of defendants' home.

Plaintiffs allege three claims: (1) for injuries suffered by Mr. Johnston, who eventually had a leg amputated due to a postoperative infection; (2) for injuries to the little girl; and (3) for damages to the motorbike—this claim being assigned to plaintiffs by the owner of the motorbike. The minor plaintiff was represented by a guardian ad litem at trial.

Plaintiffs first assign error to the failure of the trial court to specifically withdraw the issue of contributory negligence from the jury. Defendants' counsel made mention of this defense in his opening statement and during trial elicited testimony which was obviously directed at the question of whether Mr. Johnston was handling the motorbike

properly or could have avoided the accident. Although the trial court deleted all reference to contributory negligence from his instructions, plaintiffs argue that this defense should have been affirmatively withdrawn by instruction. The trial court considered this argument on plaintiffs' motion for new trial and rejected it. Defendants make a two-pronged argument on this point: first, that contributory negligence was a proper issue involved in the case; and second, that even if contributory negligence was not a proper issue, the court adequately withdrew it and the jury was entitled to consider plaintiff's handling of the motor-bike under the question of proximate cause.

■ Common law liability[1] for injuries caused by vicious or dangerous dogs is based upon a form of strict liability. One who keeps a dog, who knows or reasonably should know that the dog has vicious or dangerous propensities likely to cause the injury complained of, has a duty to kill the animal or confine it. Any injury caused by such an animal subjects the owner to prima facie liability without proof of negligence. *Robinson v. Marino,* 3 Wash. 434, 28 P. 752 (1892); *Mailhot v. Crowe,* 99 Wash. 623, 170 P. 131 (1918); *Shelby v. Seung,* 144 Wash. 317, 257 P. 838 (1927); *Brewer v. Furtwangler,* 171 Wash. 617, 18 P.2d 837 (1933). *See* Prosser, Torts 510, 513-517 (3d ed. 1964); Annot., 66 A.L.R.2d 916 (1959).

The courts in various jurisdictions appear to be about

---

[1]Plaintiffs' complaint could be read to sound in negligence, or negligence per se based upon violation of a statute as well as common law strict liability for keeping dangerous animals. The statutes involved (RCW 9.08.010, and a Snohomish County Resolution) require a knowledge of the dog's vicious or dangerous tendencies before its owner is in violation. The trial court's instruction No. 13, which is now the law of the case, also predicated recovery upon a showing of defendants' knowledge of the dog's vicious tendencies. Therefore, even though the words "negligence" and "negligent" frequently appear in plaintiffs' complaint, the case was tried under theories which prohibited recovery except upon a showing of the elements necessary for the imposition of common law strict liability. This will thus be treated as a common-law action for recovery based upon scienter. *See Brewer v. Furtwangler,* 171 Wash. 617, 620, 18 P.2d 837 (1933); Annot., 66 A.L.R.2d 916, 919 (1959).

evenly divided upon the issue of whether contributory negligence is a defense to this common law liability. *See* 66 A.L.R.2d, *supra,* 924-39. However, we are already aligned with those courts which hold that contributory negligence is not a defense in a common law action based upon scienter. *Brewer v. Furtwangler, supra,* at 620:

The terms "negligence" and "contributory negligence" are employed, for convenience and not in a strictly legal sense, in actions of the class in which the case at bar falls. The ground of liability in an action for injuries caused by a vicious dog is not negligence in the ordinary sense; hence, in its ordinary meaning, contributory negligence is not a defense.

The reasoning in *Brewer* was supported by the following quotation found in *Clinkenbeard v. Reinert,* 284 Mo. 569, 577, 225 S.W. 667, 13 A.L.R. 485 (1920):

'Such an animal is a nuisance, and the keeping of it after notice of its ferocious propensity is so wrongful that the owner is chargeable for any neglect to keep it with such care that it can not do any damage to any person who without essential fault is injured by it.'

We find no reason now to depart from our holding in *Brewer.* A vicious, malicious, or dangerous dog is just as much a menace and a nuisance in a suburban neighborhood now as it was 35 years ago. There are strong policy reasons supporting the imposition of strict liability upon one who keeps such a hazard to passers-by.

Of course if plaintiff's own actions comprise such "essential fault" as to constitute the proximate cause of his injury, or if plaintiff provoked the animal, such behavior might constitute a defense. *See Muller v. McKesson,* 73 N.Y. 195, 29 Am. R. 123 (1878); 66 A.L.R.2d 916, 931, *supra.* But such behavior can and should be distinguished from that which merely contributes to the accident in the usual negligence concept.

Defendants contend that, in addition to the common law ground for recovery based upon scienter, plaintiffs alleged negligence in their complaint, and that contributory negligence is a defense for that cause of action. Even though

negligence was alleged in the complaint, the jury was instructed that plaintiffs were not to recover absent a showing that defendants knew or should have known of their dog's vicious tendencies. Defendants do not object to this instruction. This requirement of knowledge or scienter is the only prerequisite to the application of common law strict liability. Therefore, even though plaintiffs alleged negligence, they could only have recovered by proving the elements of a common law action based on scienter—to which contributory negligence is not a defense.

■ Contributory negligence was mentioned in the opening statement. Testimony was also elicited during trial concerning Mr. Johnston's operation of the motorbike. The admissibility of this testimony is not here challenged and we express no opinion as to whether it was admissible on the issue of proximate cause. However, the fact remains that defendants interjected an improper defense into this case in their opening statement and later introduced testimony which would support that defense.

Defendants received the benefit of the statement of counsel in his opening statement and of considerable testimony relating to plaintiff Mr. Johnston's care and manner of operation of the motorbike prior to the time in trial when the court properly ruled that contributory negligence was not in issue. The jury should have been specifically instructed that it was not to consider such evidence as a defense of the negligence of the operator of the motorbike. The prejudice to the claim of the plaintiff daughter, to whom any negligence of the father was not imputed, is even more apparent.

We have frequently held under similar circumstances that an instruction specifically withdrawing the defense from the jury's consideration is both necessary and proper. See Blomskog, Erickson & Cotton v. Seattle, 107 Wash. 471, 182 P. 571 (1919); Adamson v. Traylor, 60 Wn.2d 332, 373 P.2d 961 (1962). The trial court's failure to affirmatively withdraw the issue of contributory negligence was error entitling plaintiffs to a new trial.

Plaintiffs also assign error to the failure of the trial court to give their proposed instruction No. 9 which read:

In considering whether defendants knew or should have known facts sufficient to put them on notice that their dog might injure other persons, you are instructed that the injury complained of does not have to be the exact same injury that the dog has inflicted before in order to hold the defendants liable. It is sufficient if the plaintiffs were injured by the conduct of a dog the defendants knew was dangerous or vicious.

Plaintiffs contend that defendants' arguments plus the trial court's instruction No. 13 misled the jury into understanding that the dog's previous manifestations of viciousness must have been nearly identical to those causing the accident before knowledge of viciousness will result in liability to the owner.

Instruction No. 13 reads:

An owner of a dog is not liable for injuries caused by it unless: the dog has a vicious propensity or dangerous tendency as those terms are herein defined; the owner knows or by the exercise of reasonable care should know of the same; and the vicious propensity or dangerous tendency is similar to the type involved in the accident of which the plaintiff complains.

Therefore, unless you find that: the defendant's dog, Timmy, possessed vicious propensities or dangerous tendencies that the defendants knew or in the exercise of reasonable care should have known of such propensities; and the propensities were of the type which, in the light of ordinary human experience, would be likely to cause the type of accident which plaintiff complains of, then your verdict must be for the defendants and against the plaintiff.

This instruction is not challenged on appeal; so the question is whether plaintiffs' proposed instruction No. 9 should have also been given.

■ Plaintiffs correctly point out that it is not necessary for a dog to have previously bitten someone before its owner will be charged with knowledge that it is likely to do so. *See Mailhot v. Crowe*, 99 Wash. 623, 170 P. 131. Nor will the owner of a vicious dog be excused from liability

when the dog knocks a woman down merely because the dog is muzzled. *See Hicks v. Sullivan,* 122 Cal. App. 635, 10 P.2d 516 (1932). However, there is the requirement that the owner have knowledge of a trait or propensity of the animal which would be likely to cause the accident complained of. *See* Prosser, Torts 515 (3d ed. 1964). Under plaintiffs' proposed instruction, an owner would be liable for *any* damage caused by a dog he knew to be dangerous or vicious. Under the court's instruction, the owner must have knowledge of propensities which "in the light of ordinary human experience, would be likely to cause the type of accident which plaintiff complains of." We believe the instruction as given is a correct statement of the law. There was no error in refusing to give plaintiffs' requested instruction No. 9.

Plaintiffs also assign error to the failure of the trial court to give the King County Uniform Jury Instruction stating that violation of a statute or ordinance governing conduct is negligence per se. The trial court gave plaintiffs' requested instructions setting forth RCW 9.08.010 and a Snohomish County Resolution which make it unlawful for the owner of a vicious dog to let it run at large.[2] The court then gave the following instruction No. 11:

> You are instructed that if the dog owned by defendants was vicious by nature and if the defendants knew, or in the exercise of reasonable care should have known that their dog was vicious, and accustomed to attack and injure mankind, then the defendants kept this dog at their own risk and they are *prima facie* liable for any injuries or damage caused by this dog in attacking or attempting to attack the plaintiffs. The conduct on which the liability is founded is keeping such an animal with knowledge that it might cause injury if not restrained.

This instruction adequately outlines the effect of the statute and resolution. It is probably less confusing than a standard negligence per se instruction since the ground for liability

---

[2]Although not of import in this case, we note that the statute relates to "animal known to possess any vicious or dangerous tendencies" whereas the resolution relates to "any dog, which is known or at the exercise of reasonable care, should be known, to be vicious."

"is not negligence in the ordinary sense." *Brewer v. Furtwangler,* 171 Wash. 617, 18 P.2d 837.

The final issue raised by plaintiffs concerns the admissibility of testimony of a state patrol officer as to statements made to him by the minor plaintiff in a hospital emergency room within an hour after the accident. The little girl told the officer "that the dog jumped out at the motorcycle." She was not called to testify and the officer's testimony was barred as hearsay. Plaintiffs made an offer of proof and contend that the testimony was admissible under the res gestae exceptions to the hearsay rule.

■ Res gestae is a term which is applied to a class of exceptions to the hearsay rule which relates primarily to testimony about statements or actions so close in time and substance to the event they explain as to make them part of the event itself. The statements or acts most often fall within the exception to the hearsay rule termed "excited utterances" or "spontaneous declarations." *See McCandless v. Inland Northwest Film Serv., Inc.,* 64 Wn.2d 523, 392 P.2d 613 (1964); *May v. Wright,* 62 Wn.2d 69, 381 P.2d 601 (1963). The requirements for considering a statement as part of the res gestae were set out in *Beck v. Dye,* 200 Wash. 1, 9, 92 P.2d 1113, 127 A.L.R. 1022 (1939), and have since been consistently followed by this court. They are as follows:

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction

or witnessed the act or fact concerning which the declaration or statement was made.

It is not necessary that the statement in question be made simultaneously with the event and some fluctuation in the time element is necessarily allowed. *May v. Wright, supra.* It is not necessary that the statement be made completely spontaneously, for under proper circumstances responses to questions may be admitted. *Robbins v. Greene,* 43 Wn.2d 315, 261 P.2d 83 (1953). The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment. *See Robbins v. Greene, supra; McCandless v. Inland Northwest Film Serv., Inc., supra.*

While we do give deference to rulings made by the trial court in these evidentiary matters, particularly when the statement in question occurs some time after the event, we feel that the statements in question are so clearly part of the res gestae that their exclusion is error. The possibility that statements made to a state patrol officer by a 4-year-old child in a hospital emergency room within an hour after she had received serious facial lacerations would be the product of fabrication or a reasoned attempt to improve her position in a subsequent lawsuit is almost too remote to be considered. These statements meet the six requirements outlined in *Beck v. Dye, supra,* as well as the crucial test of whether they were directly impelled by the event. The statements relate to the crucial factual issue of the dog's actions immediately prior to the accident and thus their incorrect exclusion was prejudicial.

■ The fact that the plaintiff daughter was not quite 4 years old at the time of the accident and thus presumably not competent to testify directly does not prohibit the use of the declaration under the res gestae rule. *See State v. Hutchison,* 222 Ore. 533, 353 P.2d 1047, 83 A.L.R.2d 1361 (1960); 83 A.L.R.2d 1361 (1962); Annot., 83 A.L.R.2d 1368, 1385 (1962).

In view of the foregoing errors, plaintiffs' motion for a new trial should have been granted. The judgment of the trial court is reversed and the cause remanded for a new trial.

HUNTER, C. J., HILL and ROSELLINI, JJ., and ARMSTRONG, J. Pro Tem., concur.

September 15, 1969. Petition for rehearing denied.